[644 NYS2d 844]

In the Matter of GERALD D. JENNINGS, as Mayor of the City of Albany, Petitioner, v NEW YORK STATE OFFICE OF MENTAL HEALTH et al., Respondents.

Third Department, June 27, 1996

## APPEARANCES OF COUNSEL

*Vincent J. McArdle, Jr., Corporation Counsel* of City of Albany *(Thomas A. Shepardson* of counsel), for petitioner.

*Dennis C. Vacco, Attorney-General,* Albany *(Patrick Barnett-Mulligan* of counsel), for New York State Office of Mental Health, respondent.

*Stein & Schonfeld,* Garden City, New Jersey *(Robert Schonfeld* of counsel), for Rehabilitation Support Services, Inc., respondent.

## OPINION OF THE COURT

WHITE, J.

In December 1994, respondent Rehabilitation Support Services Inc. (hereinafter RSS) notified petitioner of its intent, pursuant to Mental Hygiene Law § 41.34, to establish a supervised community residence at 117 South Lake Avenue in the City of Albany for 10 individuals with mental illness. Subsequently, petitioner, pursuant to Mental Hygiene Law § 41.34 (c), objected to the siting of a community residence in this area, contending that this project would result in an overconcentration of community residences so that the nature and character of the area would be significantly altered. After a hearing, respondent Commissioner of Mental Health rejected petitioner's objections and found that the establishment of a community residence at 117 South Lake Avenue would not result in such an overconcentration of community residential facilities so as to substantially alter the nature and character of the area. Petitioner sought CPLR article 78 relief on the grounds that the Commissioner's determination was arbitrary and capricious and not supported by substantial evidence, claiming that he arbitrarily fixed the boundaries of the neighborhood and thereby excluded a number of community residences located within the immediate area. Supreme Court transferred the substantial evidence question to this Court.

In reviewing this matter, we note that in the declaration of legislative intent accompanying the enactment of the statute regarding site selection, the Legislature recognized the need to avoid, where practicable, a disproportionate number of community residences and other similar facilities (*see,* L 1978, ch 468, § 1). Further, in a 1992 amendment, the Legislature again

expressed its concern by providing that in addition to community residential facilities for the mentally disabled, a number of other types of care facilities should be considered in determining the question of overconcentration (*see*, L 1992, ch 823, § 3).

Mental Hygiene Law § 41.34 provides that in the event of an objection by a municipality, the need for the facility shall be considered, as well as the existing concentration of similar facilities. Here, the need was not disputed by petitioner and several witnesses testified that they knew of no problems with five other RSS facilities located in other parts of the City.

Petitioner's main contention is that there is a significant overconcentration of facilities of this type in close proximity to the site selected on South Lake Avenue, and in support thereof, the City's Director of Planning produced two maps, each showing special needs housing funded or sponsored by a governmental agency or a not-for-profit sponsoring agency where the residency is based on some disadvantage or disability. One map shows the facilities located within a radius of $1/2$ mile and the second map shows those within a $3/4$-mile radius of the proposed site. The City Planner testified that in this area, which is zoned for one-and two-family residences, the City had never objected to the siting of any of the numerous community residential facilities, but had become increasingly concerned about the oversaturation of community housing in the South Lake Avenue corridor and thus began to compile maps showing the location of these facilities. The second map showed over 30 facilities within a $3/4$-mile radius of the site and the planner opined that this area had reached the saturation point. A number of other witnesses testified as to the disproportionate number of special needs housing units in the area with the cumulative effect being a dramatic change in the character of the neighborhood, and we note that in the past some of these witnesses were greatly supportive and intimately involved with similar facilities which had located in this area previously.

The Commissioner, in finding that there was not an overconcentration of similar facilities, limited his consideration to a 13-block neighborhood which encompassed less area than delineated by other witnesses and was significantly smaller than that shown on the City maps. In addition a number of other witnesses described the neighborhood with differing boundaries and, as noted, the City produced maps showing the concentration of facilities within both a $1/2$- and $3/4$-mile radius of the proposed site.

Thus, the Commissioner, by unilaterally defining the area, considered only 10 residential programs with some 57 beds and arbitrarily removed from consideration eight facilities with over 78 additional beds which would fall within $3/4$ of a mile of the site in question. He also excluded the Oxford House, a residential facility just across the street from 117 South Lake Avenue which was established through State contract, on the grounds that this facility was not licensed by the State. Properly excluded from consideration because of their size were the Capital District Psychiatric Center, a 210-bed inpatient hospital, and the Alcoholism Recovery Center, a 40-bed detoxification facility, which comports with the statute and the prior decisions of this Court limiting our review on the question of overconcentration to similar facilities with 14 or less residents.

Although we have consistently upheld the Commissioner's determinations in this field, this Court has also repeatedly emphasized the necessity to avoid overconcentration in a particular area (*see, Matter of City of Kingston v Surles,* 180 AD2d 69; *Matter of City of Beacon v Surles,* 161 AD2d 945, *appeal dismissed* 76 NY2d 936; *Matter of Hallenbeck v Webb,* 142 AD2d 852; *Matter of Fisher v Webb,* 136 AD2d 806). In *Matter of Town of Brunswick v Webb* (145 AD2d 844, 845), we approved the location of a community residence facility "absent some indication of overconcentration in the proximity of the proposed site".

The Commissioner also found that the testimony regarding the substantial alteration of the neighborhood by a number of residents was speculative. However, there is no statutory definition of what constitutes "substantial alteration" and from the record it is evident that the area in question already has been substantially altered by an oversaturation of similar facilities and the addition of the community residence at 117 South Lake Avenue would serve to exacerbate this problem.

Although we recognize there can be no precise definition of an "area", and the Commissioner's findings in this regard are entitled to great deference, in this unique situation where there is a high concentration of similar facilities that impact upon the subject area, we find that the Commissioner's delineation of the neighborhood boundaries to exclude a number of other residential facilities in close proximity to the site in question was arbitrary and capricious, and that an additional community residence would only serve to continue the substantial

alteration of the nature and character of the area. Accordingly, the petition is granted.

CARDONA, P. J., CASEY, PETERS and SPAIN, JJ., concur.

Adjudged that the determination is annulled, without costs, and petition granted.